```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :
                                            GOVERNMENT'S
         - v. -                     :       APPLICATION FOR
                                            POST-INDICTMENT
HAFIZ MUHAMMAD ZUBAIR NASEEM,        :       RESTRAINING ORDER
and AJAZ RAHIM,
                                    :       07 Cr. 610 (RMB)
              Defendants.
                                    :

                                    :
- - - - - - - - - - - - - - - - - - x
```

The United States of America respectfully moves the Court pursuant to Title 21, United States Code, Section 853(e) for a Post-Indictment Restraining Order:

1. restraining AJAZ RAHIM, the defendant (the "defendant") from engaging in the transfer, sale, assignment, pledge, hypothecation, encumbrance, dissipation or other movement of certain property which is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), to wit: all right, title and interest of AJAZ RAHIM, the defendant in the following:

        a. Up to $6,100,000 on Deposit in Account No. 15.5876 at Bank Julius Baer Co. Ltd (Guernsey Branch) (hereinafter, "Account A"); and

        b. Up to $3,651,339 on Deposit in Account No. 15.5568 at Bank Julius Baer Co. Ltd (Guernsey Branch) (hereinafter, "Account B"),

(hereinafter referred to collectively as the "Guernsey Funds").

2.  The Guernsey Funds are subject to forfeiture upon conviction of the defendant for violation of federal law, as set forth more fully herein.

THE FORFEITURE ALLEGATIONS

3.  On July 3, 2007, a federal grand jury in the Southern District of New York returned Indictment 07 Cr. 610 (RMB (the "Indictment"). The Indictment charges the defendant, along with co-defendant HAFIZ MUHAMMAD ZUBAIR NASEEM ("NASEEM"), with twenty-six counts of securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff; and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2. A copy of the Indictment is attached hereto as Exhibit A and is incorporated herein by reference as if set out in full.

4.  The Indictment also contains a criminal forfeiture allegation charging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2641 of all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the securities fraud offenses, in an amount not less than approximately $9 million.

5.  On October 9, 2007, the Government filed a Bill of Particulars pursuant to United States v. Grammatikos, 633 F.2d 1013, 1024 (2d Cir. 1980), giving notice that the property subject to forfeiture as a result of the offenses described in Counts One through Twenty-Six of the Indictment, as alleged in

the Forfeiture Allegation, includes all right, title and interest of AJAZ RAHIM, the defendant in the Guernsey funds.

## AUTHORITY FOR RESTRAINING ORDER

6. Title 18, United States Code, Section 981(a)(1)(C) subjects to forfeiture to the United States:

> Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section ... 1028 ... of this title or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title or a conspiracy to commit such offense.

7. "Specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7), and the term includes any offense listed under 18 U.S.C. § 1961(1). Section 1961(1) lists, among other offenses, "fraud in the sale of securities."

8. Under Title 28, United States Code, Section 2461(c), in any case where the forfeiture of property is authorized in connection with a violation of an Act of Congress, and any person is charged in an indictment with such violation but no specific statutory provision is made for criminal forfeiture upon conviction, the United States may seek forfeiture pursuant to the procedures set forth in Title 21, United States Code, Section 853 (other than § 853(d)).  See 28 U.S.C. § 2461(c).

9. To protect the ability of the United States to exercise its right of forfeiture, 21 U.S.C. § 853(e) empowers district courts to enter restraining orders and injunctions to preserve the availability of property subject to forfeiture.  Under

Section 853(e)(1)(A), a restraining order may be obtained upon the filing of an indictment charging a violation for which criminal forfeiture may be ordered and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture.[1]

10. Furthermore, if the district court determines that there is probable cause to believe that the property seized would, in the event of conviction, be subject to forfeiture and that an order pursuant to Section 853(e) may not be sufficient to assure the availability of the property for forfeiture, Section 853(f) empowers district courts to issue a warrant authorizing the seizure of such property. Under 21 U.S.C. § 853(l), the district court has jurisdiction to enter restraining orders under

---

[1] Title 21, United States Code, Section 853(e)(1)(A) provides:

> Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) of this section for forfeiture under this section --
>
> (A) upon the filing of an indictment or information charging a violation of this subchapter or subchapter II of this chapter for which criminal forfeiture may be ordered under this section and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section[.]

Section 853(e) (as well as the other subsections of Section 853) "without regard to the location of any property which may be subject to forfeiture under this section or which has been ordered forfeited under this section."

11. Courts in this Circuit have regularly imposed restraining orders pursuant to 21 U.S.C. § 853(e) to ensure that the forfeiture penalty mandated by the narcotics, money laundering and bank fraud statutes will not be frustrated by dissipation of the defendant's assets.[2] By entering a restraining order, the Court can preserve the *status quo* pending the jury's verdict.

## THE ASSETS SOUGHT TO BE RESTRAINED

12. The Government seeks to restrain the interests of the defendant in the Guernsey Funds, as described in paragraph 1 above. As explained in greater detail in the Verified Complaint seeking *in rem* forfeiture of the Guernsey Funds and in the Criminal Complaints that are attached to and incorporated by reference in the Verified Complaint, from in or about April 2006 through in or about February 2007, the defendant, NASEEM and others participated in a scheme to defraud by executing

---

[2] *See also, e.g., United States* v. *Rudaj*, No. S1 04 Cr. 1110 (S.D.N.Y. Oct. 25, 2004) (Sweet, J.); *United States v. Grant*, No. 04 Cr. 207 (S.D.N.Y. March 17, 2004) (Jones, J.); *United States* v. *Irving*, No. 00 Cr. 678 (S.D.N.Y. July 13, 2000) (Hellerstein, J.); *United States* v. *Lino*, No. 00 Cr. 632 (S.D.N.Y. June 13, 2000) (Koeltl, J.); *United States* v. *Bellomo*, No. 96 Cr. 430 (S.D.N.Y. June 10, 1996) (Mukasey, J.).

securities transactions based on material, nonpublic information regarding forthcoming announcements relating to acquisitions of the following nine publicly traded companies:  Northwestern Corporation ("NWEC"), Energy Partners, Ltd. ("EPL"), Veritas DGC Inc. ("VTS"), Jacuzzi Brands, Inc. ("JJZ"),  Trammell Crow Co. ("TCC"), Hydril Company ("HYDL"), Caremark RX, Inc. ("CMX"), John H. Harland Co. ("JH"), and TXU Corp. ("TXU") (these companies are collectively referred to as the "Issuers" and the securities in these companies are collectively referred to as the "Subject Securities").  A copy of the Verified Complaint is attached hereto as Exhibit B.

  13.  Credit Suisse was engaged to advise either the target company or the acquiring entity in connection with business combination transactions involving the Issuers (the "Subject Transactions").  NASEEM, an investment banker who was a member of Credit Suisse's Global Energy Group, worked at a desk at Credit Suisse's offices in New York, New York, that was situated in close proximity to other members of the Global Energy Group. Because many of the Subject Transactions were staffed by members of the Global Energy Group, NASEEM had access to information about these transactions by virtue of his membership in the Global Energy Group.  Furthermore, NASEEM had accessed to an internal Credit Suisse database that contained information about certain of these transactions.

14. NASEEM regularly and repeatedly called the defendant and provided him with material non-public information regarding the Subject Transactions (the "Credit Suisse Inside Information") in violation of (a) the duties of trust and confidence owed by NASEEM to Credit Suisse and its clients, and (b) Credit Suisse's written policies regarding the use and safekeeping of confidential and inside information.

15. The means by which NASEEM and the defendant effectuated the fraudulent scheme were as follows:  NASEEM would typically call the defendant at his home or on the defendant's cell phone in advance of a public announcement that a particular Issuer was to be acquired by another entity and he would provide Credit Suisse Inside Information to the defendant regarding the acquisition in question.  Shortly after receiving such a call the defendant would purchase securities in that Issuer based on the Credit Suisse Inside Information he received from NASEEM. Following public disclosure that an Issuer was being acquired – which always occurred after the defendant had already purchased securities in that particular Issuer – the defendant would quickly sell all of the securities he had purchased in advance of the public disclosures.  The defendant executed dozens of securities transactions, including trades in an offshore account, based on Credit Suisse Inside Information and profited from his

trading in each of the Subject Securities. The defendant earned total profits in excess of $7.5 million from the scheme.

16. As detailed in the Criminal Complaints attached to the Verified Complaint, on numerous occasions telephone calls were made from a Credit Suisse telephone number assigned to NASEEM to phone numbers associated with the defendant shortly before the defendant executed trades in the Subject Securities. The Criminal Complaints further described how NASEEM sold all of these securities at or about the time that news of the Subject Transactions was released to the public.

17. Based on information obtained during the investigation conducted by the Federal Bureau of Investigation ("FBI"), directly and indirectly, from a number of sources, including information provided by the Securities and Exchange Commission, business records and other documents obtained from various entities, and publicly available information, the FBI learned, among other things, that the defendant executed trades in four of the nine Subject Securities – John Harland, Hydril, Caremark and TXU – in Accounts A and B following calls from NASEEM's Credit Suisse telephone number to telephone numbers associated with the defendant. Proceeds from the sale of those securities were deposited in Accounts A and B. Specifically, $6,100,000 in proceeds from such sales was deposited in Account A, and $3,651,339 was deposited in Account B.

## THE PROPOSED RESTRAINING ORDER

18.  By entry of this restraining order, the Government merely seeks to maintain the status quo and avoid the dissipation of assets that will be forfeited to the United States upon a verdict.

19.  The proposed restraining order is reasonable in that it seeks to restrain only the assets listed in the Bill of Particulars, to which the Government will become entitled upon the entry of a judgement of forfeiture.  Thus, the proposed Restraining Order would cover only directly forfeitable property in which the defendant has an interest.

20.  Accordingly, it is respectfully requested that an ex parte restraining order issue enjoining AJAZ RAHIM, the defendant, and his attorneys, agents, and employees, and anyone acting on his behalf, and all persons or entities in active concert or participation with any of the above, from transferring or dissipating any interest held by the defendant, in the Guernsey Funds described in paragraph 1 of this Application.

WHEREFORE, the United States of America requests the entry of the order of restraint and prohibitions as submitted.

Dated:   New York, New York
         October 14, 2007

                              Respectfully Submitted,

                              JOSHUA KLEIN
                              United States Attorney

                     By:_____/s/_____
                         JOSHUA KLEIN
                         Assistant United States Attorney
                         Telephone: (212)637-2397